By the Court.—Sanford, J.
This case appears to have been submitted to the jury upon the issues of *160 fact presented by the pleadings under proper instructions from the court, and I see no reason to interfere with the verdict, either as against the weight of evidence, or on the ground of excessive damages. The jury were in effect instructed that the burthen of proof was upon the plaintiff, and that in order to recover he was bound to satisfy them by a preponderance of credible testimony that the defendants were guilty of negligence, whereby his injuries were occasioned, and that no negligence on his part contributed thereto that on the other hand, an absolute duty devolved upon him to exercise all his faculties against suffering • injury from facts of which he had notice; and that, under the circumstances, it was a question of fact for them to say, whether he “was using ordinary prudence in proceeding as he did on the platform as he described it, slippery to the extent that it was, in the midst of such disturbance as he described.”
The court further charged, in compliance with the request of defendants’ counsel, that the defendants were not bound to keep their platform in such a condition that it would be impossible for a passenger to slip thereon ; but in such condition, that persons using the ordinary care that people do use when they are not apprised of danger, would not have slipped. That the plaintiff was negligent, if, having seen that there was snow and ice on the platform on which others slipped, he did not exercise greater 'care and caution than he would have used if he did not know that there was snow or ice, and that the notice he had of danger called upon him to use special precautions against slipping.
These instructions are as favorable to the defendants as they well could be, consistently with the established rules of law applicable to cases of negligence. Railroad corporations, as carriers of passengers for hire, are responsible for something more than mere ordinary care in keeping their floors and plat *161 forms in a safe and proper condition for the entrance and egress of passengers into and ont of their cars. They aré bound to use all such reasonable precautions against injury as human sagacity and foresight can suggest; and their passengers have a right to expect and to assume that in proceeding with ordinary care over platforms, and through passages leading to and from their seats in the train, they may do so without risk of injury to life or limb from an unsubstantial, insecure or treacherous foothold (Hurlburt v. N. Y. Central R. R. Co., 40 N. Y. 145; McDonald v. Chicago & N. W. R. R. Co., 56 Iowa, 124).
It is not stating the responsibility of carriers of passengers for hire too strongly in this regard to declare that they are bound “to be on the alert during cold weather, to see whether there is ice upon the platform, and to remove it, or make it safe by sanding it, or putting ashes upon'it, or in some other manner.” The degree of care requisite for securing safety varies with the exigencies of the case, and it is no error to assert that a more watchful scrutiny should be exacted and bestowed in winter than in summer in protecting steps, landings and platforms from dangerous accumulations of snow and ice. Indeed, the evidence in this case shows that the defendants recognized this very obligation, for one of their witnesses testified that he always did his best to try and keep the platform free from snow. That he generally took ashes or sand, and shook it on the platform, and on the steps leading in and out of the door. That he took a broom, and swept the snow off; and a mop, and mopped it after-wards, “Avhich,” he adds “was my duty to do.” In exacting from their employees a more stringent observance of the precautions requisite for securing the safety and comfort of their passengers than their counsel deems strictly obligatory, we think the defendants but conformed to the requirements of law, and in no Avise *162 exceeded their responsibility to the public. It was for the jury to determine, on all the evidence, whether such precautions were in fact observed or omitted.
The exceptions taken at the trial to certain rulings of the court in rejecting evidence have been considered, and are not deemed tenable.
The motion for a new trial on the ground of newly discovered evidence was properly denied. The existence of this evidence alleged to have been newly discovered, could readily have been ascertained by the defendants prior to the trial, had proper diligence to that end been employed. Indeed, facts within the knowledge of the conductor "in charge of the train upon which an accident occurs, may properly be deemed to be within the knowledge of the company running the train. That the defendants’ superintendent failed to inform himself of such facts by inquiry of the conductor, affords no ground for ordering a new trial; especially where, as in the present case, no effort seems to have been made to secure the attendance or obtain the deposition of the conductor, who might well have been presumed, and was, in fact, known to defendants’ counsel to be a material witness for the defense.
Ordinary diligence on the part of the defendants would have elicited from their conductor all the facts within his knowledge pertinent to the controversy, and the omission to interrogate him fully, and to procure Ms testimony, is wholly inexcusable. Applications of this character are addressed to the discretion of the court, and are regarded with disfavor. The applicant must show that he has done all in his power, and that failure to discover the testimony was owing to no delinquency on his part. “If the least fault be imputable to him he will ask for relief in vain” (3 Graham & Waterman, 1026).
I am of opinion that the newly discovered evidence *163 in question would not, if adduced at the trial, have materially affected the result. It is not of sufficient weight to authorize a new trial.
The judgment and orders appealed from should be affirmed with costs.
Curtis, Ch. J., and Freedman, J., concurred